IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROY MITCHELL,

    Plaintiff,

    v.                                                         Case No. 15-cv-108-wmc

KEVIN KALLAS AND DAWN LAURENT,

    Defendants.

**DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Roy Mitchell is a former inmate. Though biologically a male, Mitchell identifies as a female.[1] She is suing Drs. Kevin Kallas and Dawn Laurent for their alleged failure to treat Mitchell for gender dysphoria while she was incarcerated in the Wisconsin Department of Corrections; she specifically sought female hormone therapy as treatment for her gender dysphoria. Mitchell has filed a motion for summary judgment. In response, the defendants bring a cross-motion for summary judgment because there is no dispute that they followed a proper course of treatment with Mitchell and were not deliberately indifferent to her serious medical needs in violation of the Eighth Amendment.

---

[1] Feminine pronouns will be used in reference to Mitchell.

1

# ISSUE PRESENTED

1. To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the defendants acted with deliberate indifference to his health or safety. Here, Mitchell's gender dysphoria needs were thoroughly assessed by DOC staff and an outside expert. Hormone therapy was recommended, but it could not be initiated in prison given Mitchell's imminent release. Were the defendants deliberately indifferent to Mitchell's mental health needs?

2. Under 42 U.S.C. § 1997e(e), inmates may not recover compensatory damages without a prior showing of physical injury. Punitive damages are only awarded where there is evidence of evil motive or intent to harm. Mitchell does not allege a physical injury, and the failure to initiate hormone therapy just prior to her release was medically sound. Should any claims for compensatory and punitive damages be dismissed?

3. Government officials have qualified immunity from suits for damages when their actions do not violate a clearly established constitutional right. To be clearly established, existing precedent must have placed the constitutional question beyond debate. No controlling case law has held that inmates have a constitutional right to initiate hormone therapy where there is not enough time to medically monitor the inmate prior to release. Are the defendants entitled to qualified immunity?

# STATEMENT OF THE CASE

Plaintiff Roy Mitchell is a former inmate (DFOF ¶ 31). She was confined at the Columbia Correctional Institution from October 11, 2011 through January 8, 2013, when she was released from custody (*id.*). Mitchell came back to prison at Dodge Correctional Institution on November 5. 2014, where she resided until she was again released from custody on February 17, 2015 (*id.*). Defendant Dr. Kevin Kallas is the Mental Health Director of DOC (DFOF ¶ 1). Dr. Dawn Laurent was

Supervisor of the Psychological Services Unit at Columbia Correctional when Mitchell resided there prior to her release in 2013 (DFOF ¶ 5).

Mitchell is a male-to-female transgendered person (DFOF ¶ 32). During her incarceration at Columbia Correctional, she requested hormone treatment for gender dysphoria (DFOF ¶ 39). DOC has a policy addressing treatment for inmates with gender dysphoria (DFOF ¶ 12). The policy requires that Mitchell's request be submitted to Dr. Kallas, the Mental Health Director and a member of the Gender Dysphoria Committee (DFOF ¶ 42). Pursuant to the policy, Dr. Kallas directed a staff psychologist at Columbia Correctional to conduct an initial assessment to determine whether or not Mitchell would be an appropriate candidate for a consult with DOC's outside gender specialist (DFOF ¶ 43). This assessment was complete in February 2012 and forwarded to Dr. Kallas (DFOF ¶ 45). After this assessment, the Committee determined that Mitchell was an appropriate referral for an evaluation by DOC's gender dysphoria expert, Cynthia Osborne, who is from Johns Hopkins University in Maryland (DFOF ¶¶ 16, 46).

Mr. Osborne traveled to Columbia Correctional and conducted an extensive in-person interview with Mitchell on May 22, 2012 (DFOF ¶¶ 52-53). Her evaluation continued with a review of clinical and institutional records and follow-up with family and community members disclosed through her interview with Mitchell (DFOF ¶ 53). Ms. Osborne's final 27-page report was compiled and received by Dr. Kallas on December 2, 2012 (DFOF ¶ 55). While Ms. Osborne opined that Mitchell did have a diagnosis of gender dysphoria and would be a good candidate for hormone

therapy, it was not medically sound to initiate hormone therapy at that time given Mitchell's imminent release from custody 1-month later (DFOF ¶¶ 55, 63-66). Hormone therapy is life-altering treatment; there can be serious medical side effects, and it is contrary to professional judgment and the standards of care to initiate hormone therapy without proper medical monitoring (DFOF ¶¶ 68-72). Despite this, Ms. Osborne offered to assist Mitchell by speaking with any community provider that Mitchell chose to establish care with to help facilitate hormone therapy (DFOF ¶ 74). Mitchell also received consistent psychotherapy while at Columbia Correctional, engaging in 22 sessions with PSU staff (DFOF ¶ 75).

After her release, Mitchell did not seek hormone therapy through a community provider (DFOF ¶ 86). She was subsequently reincarcerated at Dodge Correctional almost 2-years later, on November 5, 2014 (DFOF ¶ 31). Mitchell again requested hormone treatment for her gender dysphoria. But Mitchell was only serving a 3-month sentence at Dodge Correctional, so there was not sufficient time to commence hormone therapy (DFOF ¶ 87). Ms. Osborne's report would have to be updated—especially given the fact that Mitchell did not pursue hormone therapy in the community after the last recommendation—and there was no way to complete reevaluation and the required period of medical monitoring after hormones are initiated (DFOF ¶¶ 63-64, 68-72). Mitchell was released from custody again on February 17, 2015 (DFOF ¶ 31).

Despite not receiving hormone therapy while in prison, DOC provided Mitchell with the appropriate recommendation to proceed with hormone therapy

4

after her January 2013 release (DFOF ¶ 74). The recommendation she received from Ms. Osborne is a necessary component for receiving hormone therapy and consistent with community standards of care (DFOF ¶¶ 57, 88). It helped pave the way for Mitchell's gender dysphoria diagnosis to become more easily verified by, and established with a community provider who could monitor initiation of hormones with an appropriate continuity of care (DFOF ¶ 74).

Mitchell filed this action shortly after her release on February 18, 2015 (Dkt. #1). In its screening order, the Court granted Mitchell leave to proceed on her claims that Drs. Kallas and Laurent were deliberately indifferent to her gender dysphoria needs in violation of the Eighth Amendment (*see,* Order, 4-7-15, Dkt. #11).[2] Mitchell moved for summary judgment on November 19, 2015 (Dkt. #86). Defendants Drs. Kallas and Laurent have filed a cross-motion for summary judgment. This brief addressed both Mitchell's and the defendants' motions for summary judgment.

## STANDARD OF REVIEW

Under Federal Rules of Civil Procedures 56(c), summary judgment "shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear

---

[2] Mitchell was denied leave to proceed on claims against her probation agent whom she alleged was preventing her from presenting as a female (Order, 4-7-15, Dkt. #11, pp. 5-6). Even though this claim was dismissed at screening, undersigned counsel contacted Mitchell's current probation agent Sara Wasserberg to investigate these allegations. Upon information and belief after communication with Ms. Wasserberg, Mitchell is not prevented from presenting as a female or seeking treatment for gender dysphoria in the community. She does, however, have to update her photograph for the Wisconsin Sex Offender Registry Program (SORP) with any material changes in appearance.

5

the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The opposing party "may not rest upon the mere allegations or denials" in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). Also, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 586 (1986). "[A] party must produce specific facts showing that there remains a genuine issue for trial and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Company*, 853 F.2d 768, 771-72 (10th Cir. 1988). In order for a party "to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

Presenting only a scintilla of evidence is not sufficient to oppose a motion for summary judgment. *Walker v. Shansky*, 28 F.3d 666, 671 (7th Cir. 1994). Moreover, more than mere conclusory allegations are required to defeat a motion for summary judgment. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996).

ARGUMENT

I. **THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON MITCHELL'S EIGHTH AMENDMENT CLAIM BECAUSE THERE IS NO EVIDENCE THAT THEY WERE DELIBERATELY INDIFFERENT TO HER GENDER DYSPHORIA.**

A. **Overview of the law.**

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. *Sherrod v. Lingle,* 223 F.3d 605, 619 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez,* 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or the unnecessary

infliction of pain. *See Reed v. McBride,* 178 F.3d 849, 852–53 (7th Cir. 1999); *Gutierrez,* 111 F.3d at 1371. The Seventh Circuit has long held that "[t]he need for a mental illness to be treated could certainly be considered a serious medical need." *See Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001)

Courts have considered gender dysphoria to be a serious medical need under the Eighth Amendment. *See, Fields v. Smith,* 653 F.3d 550 (7th Cir. 2011). Thus, for purposes of summary judgment, this brief will focus on the second "deliberate indifference" prong of the Eighth Amendment analysis.

To establish deliberate indifference, Mitchell "must demonstrate that prison officials acted with a '"sufficiently culpable state of mind."' *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). Officials must "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' " and " 'draw[ing] the inference.'" *Greeno,* 414 F.3d at 653 (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Mitchell is not required to establish that the officials "intended or desired the harm that transpired," but to instead show that they "knew of a substantial risk of harm ... and disregarded it." *Greeno,* 414 F.3d at 653.

Disagreements between an inmate and a medical provider about treatment decisions will not support a claim of deliberate indifference, and a defendant can never be held liable under § 1983 for negligence, or even gross negligence. *See Gomez v. Randle,* 680 F.3d 859, 864 (7th Cir. 2012); *Norfleet v. Webster,* 439 F.3d

8

392, 396 (7th Cir. 2006); *Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003); *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001) (courts will not take sides in disagreements about a medical professional's judgment or techniques). However, deliberate indifference may be inferred when a physician's treatment decision is "so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett v. Webster,* 658 F.3d, 742 759 (7th cir. 2011) (quoting *Duckworth v. Ahmad,* 532 F.3d 675, 679 (7th Cir. 2008)). A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Roe v. Elylea,* 631 F.3d 843, 857 (7th Cir. 2011) (quotation marks omitted).

### A. The defendants were not deliberately indifferent to Mitchell's gender dysphoria needs.

In this case, there is no dispute that Mitchell's request for hormone therapy to treat her gender dysphoria was properly treated by the defendants. Pursuant to the policy, Mitchell's request was forwarded to Dr. Kallas, who instructed that an initial evaluation take place. That evaluation was completed, and it was decided that DOC's expert should be consulted to do a thorough assessment and make recommendations. Mitchell was evaluated by a nationally-recognized expert in

9

gender dysphoria.³ While it took some months to compile Ms. Osborne's recommendations, there can be no dispute that her assessment was thorough and complied with the WPATH standards of care.

DOC sought the opinion of a gender specialist and deferred to that specialist's assessment, assessment process, and recommendations. Deferring to competent professionals in a specialized area of mental health treatment does not exhibit a level of inattention or callousness to a prisoner's needs rising to a constitutional violation. *Kosilek v. Spencer*, 774 F.3d 63, 91-92 (1st Cir. 2014) *cert. denied sub nom. Kosilek v. O'Brien*, 135 S. Ct. 2059 (2015) (no deliberate indifference where DOC deferred to recommendations from outside gender dysphoria experts).

Further, evaluations for gender dysphoria are inherently complex and detailed and the evaluation reports understandably take some time to write (*see,* DFOF ¶¶ 29, 57). The evaluator needs to gather a detailed sexual history, read through volumes of prior clinical and legal records, piece together timelines and determine the consistency of reported symptoms (*id.*). For Mitchell, this process was also delayed because of Ms. Osborne's inability to contact family and community members that could verify important information needed for the assessment (DFOF ¶ 58). While Mitchell would have preferred speeding this process along, it is critical to make a reasoned and careful determination of whether hormone treatment is a proper treatment option because it is a life-altering therapy that can have permanent effects and sometimes severe medical issues (DFOF ¶¶ 57, 64-70). *See,*

---

³ Cynthia Osborne was one of the gender dysphoria experts referenced and relied upon by the court in *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014) *cert. denied sub nom. Kosilek v. O'Brien*, 135 S. Ct. 2059 (2015).

*Fields v. Smith*, 712 F. Supp. 2d 830, 845 (E.D. Wis. 2010), *aff'd* 653 F.3d 550 (7th Cir.2011) (explaining how complications from hormone therapy can lead to such things as heart disease, hypertension, and diabetes).

Lastly, it is undisputed that the decision not to initiate hormone therapy for Mitchell while still in prison is consistent with sound medical judgment and the standards of care (DFOF ¶¶ 63-72). Even after Ms. Osborne's recommendation, hormone therapy cannot begin until the inmate is screened for medical contraindications (DFOF ¶ 64). It can take months of treatment to determine the proper dosage necessary for a patient to achieve a positive clinical response (DFOF ¶ 69). During this time, side effects and clinical response are monitored and the dosage may be adjusted to minimize side effects and maximize results (*id.*). Laboratory tests are necessary during this time to measure hormone levels (*id.*). Follow-up after the initiation of hormone therapy is necessary to screen for signs of cardiovascular impairment and venous thromboembolism through measurement of blood pressure, weight, and pulse; heart and lung exams; and examination of the extremities for peripheral edema, localized swelling or pain (DFOF ¶ 70). Laboratory monitoring after the initiation of hormone therapy is also necessary to assess the risks of hormone therapy, a patient's individual comorbidities and risk factors, and the specific regimen itself (DFOF ¶ 71). This necessary continuity of care was not possible for Mitchell prior to her release (DFOF ¶ 72).

In her brief, Mitchell relies upon *Fields* to support her deliberate indifference claim. In *Fields,* the Seventh Circuit held a Wisconsin statute banning hormone

therapy for inmates was unconstitutional where the statute removed "even the consideration of hormones" for inmates with gender issues. *Fields*, 653 F.3d at 558. But *Fields* is easily distinguished from this case where Mitchell's request for hormone therapy was undisputedly assess and ultimately recommended—there was no blanket ban, as there was in *Fields*. And contrary to *Fields,* Dr. Kallas was permitted to exercise professional judgment, ultimately determining that there was not sufficient time to initiate hormone therapy with proper medical monitoring. In *Fields*, hormone therapy was banned *regardless of* professional judgment, not *because of* professional judgment. Hence, *Fields* is not analogous.

Mitchell fails to offer substantial evidence, medical or otherwise, that sufficiently rebuts the facts outlined above, nor has she adequately disputed Dr. Kallas' testimony that she has received proper assessment and care for her gender dysphoria. Hormone therapy certainly cannot be granted upon demand. *See, Kosilek,* 221 F. Supp. 2d at 193-195 (explaining that gender dysphoria treatment "must be based on an 'individualized medical evaluation,'" which "must be made by qualified professionals," preferably with "expertise in treating gender identity disorders"). In determining whether an official's conduct rises to the deliberate indifference standard, a court may not look at the alleged acts of denial in isolation; it "must examine the totality of an inmate's medical care." *Gutierrez,* 111 F.3d at 1375. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston*

*v. Peters,* 100 F.3d 1235, 1240 (7th Cir. 1996).

In this case, Mitchell lacks any evidence that the cautionary course of action taken with her gender dysphoria request caused her a detrimental effect, or that such an approach violates any acceptable standards of care. In fact, to the contrary, the only evidence in the record supports that the steps taken in assessing, diagnosing, and formulating an appropriate gender dysphoria treatment plan were timely and properly addressed Mitchell's mental health and medical needs (DFOF ¶¶ 68-72, 87-88). Hence, summary judgment should be granted.

### B. Dr. Laurent lacks the requisite personal involvement.

Liability under § 1983 must be based on personal involvement in the constitutional violation. *See Del Raine v. Williford,* 32 F.3d 1024, 1047 (7th Cir. 1994). In this case, it is undisputed that Dr. Laurent did not have any personal involvement in assessing or diagnosing Mitchell for gender dysphoria or hormone therapy (DFOF ¶¶ 67, 78-83). She was not Mitchell's treating clinician; she only saw Mitchell once while she was at Columbia Correctional, and Mitchell's gender dysphoria needs were not discussed at that session (DFOF ¶¶ 78-79). There is no evidence that Dr. Laurent had any personal involvement in any action or inaction taken to treat Mitchell's gender dysphoria. Hence, she is entitled to summary judgment. *See, Smith v. Rohana,* 2011 WL 2880826, *2 (7th Cir. 2011) (unpublished) (dismissal of doctor proper where, although he participated in other aspects of inmate's care, there was no evidence that he had a hand in the care and treatment for the issue complained of).

## II. THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON MITCHELL'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES.

### A. Mitchell cannot recover compensatory damages under § 1997e(e).

Mitchell specifically requests money damages in the amount of $2,220,00.00 for "physical, emotional and mental abuses…" (Complaint, Dkt. #1, p. 6). However, § 803(d) of the PLRA, codified as 42 U.S.C. § 1997e(e), entitled "Limitation on Recovery," provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Here, Mitchell fails to allege any physical injury caused by the denial of hormone therapy while at Columbia and/or Dodge Correctional. Hence, Mitchell is not entitled to compensatory damages. *Pearson v. Welborn,* 471 F.3d 732, 744 (7th Cir. 2006) (allegations of mental and physical depression and losing weight insufficient to state physical injury).

### B. Mitchell fails to produce sufficient evidence to support any requested punitive damages.

Although § 1997e(e) bars recovery of compensatory damages for Mitchell, the statute is inapplicable to awards of nominal or punitive damages for violations of the right itself. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *Meyers*, 411 F. Supp. 2d at 991; *Koutnik v. Berge*, 2004 WL 1960214, *1 (W.D. Wis. 2004); *Allah,* 226 F.3d at 251. "[N]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable

14

injury." *Kyle v. Patterson,* 196 F.3d 695, 697 (7th Cir. 1999). Thus, the limitations set forth in § 1997e(e) bar the plaintiff from recovering anything but nominal damages and any punitive damages he can prove.

Punitive damages are permitted when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others, and this threshold applies even when the underlying standard of liability for compensatory damages is one of recklessness. *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Seventh Circuit explained:

> The difference between deliberate and reckless harm is the difference between wanting to hurt someone and knowing that hurting someone is a highly likely consequence of an act undertaken for a different end. But in the latter case there must be knowledge of the danger that the defendant's act creates, which in this case is a danger of depriving a public employee of her freedom of speech; and the knowledge of this danger presupposes some knowledge of the free-speech rights of public employees.

*Soderbeck v. Burnett County, Wis.*, 752 F.2d 285, 290 (7th Cir. 1985). Later on, however, the court said of the required knowledge: "We may therefore set it down as a condition of awarding punitive damages that the defendant almost certainly knew that what he was doing was wrongful and subject to punishment." *Id.* at 291. In *Wallace v. Mulholland*, 957 F.2d 333 (7th Cir. 1992), the court further clarified that "jury awards of punitive damages for unconstitutional force . . . and arrest without probable cause . . . must be supported by a finding that the officers acted with the intent to harm." *Id.* at 337 (footnote omitted).

There is no evidence in the record to support that either Dr. Kallas or Dr. Laurent were motivated by any intent to harm Mitchell. In fact, the undisputed record establishes that Mitchell was provided expert assessment of her gender

15

dysphoria needs, and the only reason she did not begin hormone therapy was because of an inability to medically assess and monitor this treatment prior to release—it was out of concern for Mitchell's health and well-being, not out of evil motive or intent. Given this, Mitchell simply cannot produce sufficient evidence to support any award of punitive damages against these defendants. Therefore, summary judgment on any request for punitive damages is appropriate. *See, Trotter v. B & W Cartage Co., Inc.,* 2006 WL 1004882, *1 (S.D. Ill. 2006) (A motion for summary judgment may be rendered as to the issue of the availability of punitive damages); *Boles v. Neet,* 402 F. Supp. 2d 1237, 1245 (D. Colo. 2005) (summary judgment granted on the issue of punitive damages where no support that defendant acted with an evil motive or callous disregard of plaintiff's First Amendment rights).

### III. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Even if the court declines to grant summary judgment on the basis of the undisputed facts presented above, the defendants are entitled to summary judgment on Mitchell's Eighth Amendment claim because they are immune from suit for any money damages under the doctrine of qualified immunity.

#### A. Overview of the law.

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a

defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *See, Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010). To be clearly established, a right "must be sufficiently clear that ***every*** reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted) (emphasis added). This is a high bar. *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012) (unpublished).

To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question ***beyond debate***." *Ashcroft v. al-Kidd,* 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011) (emphasis added). Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

### B. No clearly established Eighth Amendment right.

Even if this court concludes that the failure to initiate hormone therapy for Mitchell prior to her release from prison violates the Eighth Amendment, the defendants are entitled to qualified immunity because such a violation was not clearly established. In order to defeat qualified immunity, Mitchell must cite cases establishing that this issue is "beyond debate." *al-Kidd,* 131 S. Ct. at 2083. Mitchell has not sustained this burden. While there is no doubt that inmates have a

17

constitutional right to treatment for gender dysphoria, there simply are no analogous cases that would give notice that DOC did not follow an acceptable timeline for assessment and initiation of hormone therapy for a gender dysphoric inmate. In fact, in cases such as *Kosilek,* 221 F. Supp. 2d at 193-195, the court approvingly cited the practice of hiring an outside consultant to evaluate and formulate a treatment plan for gender dysphoric inmates—the exact course of treatment followed here. The steps taken by the defendants to follow their gender dysphoria policy and work with DOC's outside gender specialist to assess, diagnose, and treat Mitchell were reasonable and entitled to qualified immunity from any money damages.

## CONCLUSION

The defendants respectfully request that: Mitchell's motion for summary judgment be DENIED; the defendants' motion for summary judgment be GRANTED; and that judgment be entered for the defendants.

Dated at Madison, Wisconsin this 22nd day of January, 2016.

Respectfully submitted,

BRAD D. SCHIMEL
Attorney General

S/ JODY J. SCHMELZER
Assistant Attorney General
Jody J. Schmelzer
State Bar No. 1027796
Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3094 (Schmelzer)
schmelzerjj@doj.state.wi.us